Stamatis G. POLITIS, Libellant,

v.

THE British S/S OAKHURST, her boats, engines, tackle, apparel, etc., J. Vaughan, a nonresident, individually and as Master, and Rex Shipping Company, Ltd., and Hadjilas and Co., Ltd., both foreign corporations or associations, as owners and/or operators of the British S/S Oakhurst, Respondents.

No. 389.

United States District Court
E. D. Virginia,
Newport News Division.

Oct. 12, 1959.

Burt M. Morewitz, Newport News, Va., for libellant.

Vandeventer, Black & Meredith, Charles F. Tucker, Norfolk, Va., for respondents.

WALTER E. HOFFMAN, District Judge.

On October 9, 1957, this action was filed in which libellant seeks the recovery of the sum of $58,898 for personal injuries received due to the alleged negligence of the respondents and the alleged unseaworthiness of the vessel. Included in the amount claimed by libellant is a claim for maintenance, cure, and earned wages alleged to have been wrongfully withheld.

Libellant was born in Greece, but at all time material herein he was a resident of Alexandria, Egypt. At the time of his injury on April 5, 1957, libellant was serving as Second Engineer on the Oakhurst as the vessel approached the Port of Inchon, Korea. While engaged in certain repair work on one of the winches, the winch started in operation without warning, as a result of which the fingers of libellant's right hand were caught in the winch. The injury necessitated the amputation of the right index finger at the distal joint, the amputation of the third finger at the first joint, and suture of a laceration of another finger which was fractured; all of which treatment was done in an American Army hospital in Korea. While there is essentially no limitation of motion at this

time, there is no complete flexion of the third finger. According to an orthopaedic surgeon, there remained a thirty percent disability of the right hand. The libelant's ability to maintain a proper grip was diminished. There remained a remnant of the nail of the right index finger which should probably be removed, and which would involve a total expense for doctor and hospital in the approximate sum of $200, as well as a convalescent period of about four weeks. The orthopaedic surgeon testified that he found no evidence of improper medical treatment and that, at the time of his examination on July 9, 1958, libellant was employed aboard a ship.

The libellant had signed British articles according to British law on April 2, 1955, when he entered the ship's service, at which time the Oakhurst was flying the flag of Great Britain and was owned by Rex Shipping Company, Ltd., and operated by her general managers, Hadjilas & Company, Ltd., of London. He signed off the vessel on December 23, 1955, and went to his home in Egypt. He returned in February, 1956, and resumed his duties.

Libellant was sent to a hospital in Korea where, after treatment, he was later repatriated to his home in Egypt following stops at Tokyo and Singapore where he also received treatment. Treatment was continued in Egypt. Thereafter libellant went to Greece, London, and finally to Rotterdam where he was treated and maintained until advised by physicians that nothing further could be done for him. On September 23, 1957, libellant accepted from the vessel's owner the sum of £ 1,250 ($3,500 approximate) in full and final settlement of his claim, and proceeded to execute a receipt and release which stated, in part, that said amount was accepted:

" * * * in full satisfaction, liquidation, and discharge of all or any claim which I have or may have against them in respect of loss, damage, expense or personal injury (whether now or hereafter to become manifest) arising or to arise from an accident which occurred on board the SS 'Oakhurst' whilst approaching the Port of Inchon, Korea, on or about the 5th day of April, 1957."

Undoubtedly the arrangements for settlement were consummated following receipt by the owners and operators of a letter from present proctors for libellant advising of their representation of libellant's claim, and notifying respondents of a lien for attorney's fees pursuant to Virginia law. In this Court respondents are unable to point to any authority which would deprive proctors for libellant of their lien. This lien may be protected in this proceeding under the authorities, without requiring proctors to resort to an independent action. The allowance should be fixed upon quantum meruit, but the amount of the settlement, the nature of the case, and the contractual arrangements between proctors and libellant may be considered as evidence in determining the quantum meruit.

Respondents have filed a motion to dismiss the libel on the grounds of accord and satisfaction.

While this Court expresses some doubt as to the law which should be applied to a release executed in Holland, involving a seaman employed on a British vessel, for the settlement of a claim arising on the high seas near Korea, proctors for respondents have indicated their willingness to be bound by the laws of the United States. The test of the validity of a seaman's release in this country is stated in Garrett v. Moore-McCormack Company, Inc., 317 U.S. 239, 63 S.Ct. 246, 252, 87 L.Ed. 239, as follows:

"We hold, therefore, that the burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights. The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding."

■ This action was instituted only sixteen days after the settlement was accepted. The release was executed five and one-half months after the accident, and at a time when maximum recovery had apparently been obtained, except such further recovery as rested within the ability of libellant to administer through the use of his fingers. The amount of the settlement is far from de minimis, and is the equivalent of at least $5,250 (and more probably $7,000) when this Court considers, as it must, the contractual arrangements which are prevalent in this area for claims involving foreign seamen.[1]

Libellant, as indicated by his deposition, is a man of better than average intelligence. He concedes that he was aware of the contents of the release and knew what he was signing. He had already engaged the services of competent counsel and, while he was in Holland at the time, he does not suggest that he was unable to communicate with counsel and obtain competent advice with respect to the settlement.

This Court does not condone the settlement activities which are conducted "behind the back" of proctors, but the situation is not uncommon, particularly with regard to the claims of foreign seamen. It should be noted, however, that proctors of record for the respondents had nothing whatsoever to do with the settlement, and nothing herein stated should reflect upon the integrity and professional ethics of respondent's local proctors. Actually, we have a case in which both libellant and respondents have "traded behind the backs" of their proctors. Under such circumstances, assuming the tests in Garrett have been met, should we now permit the libellant to profit by his own wrong, especially where libellant's proctors are protected by their notice of lien?

It is urged that the release is invalid by reason of the economic coercion to which libellant was subjected. We are told that German v. Carnegie-Illinois

Steel Corporation, 3 Cir., 169 F.2d 715, is authority for this view. The factual situation is entirely dissimilar. In German, the seaman was injured on April 15, 1944, and three weeks thereafter suffered a cerebral thrombosis while on shore leave. For a period of two and one-half years he was engaged in litigation involving four cases arising out of his accident of April 15, 1944. During this period of time he was paid nothing by way of maintenance and cure and, at the time of the settlement, there was admittedly due the sum of $2,700 for this item alone. On September 20, 1946, against the advice of his counsel, libellant accepted a settlement in the sum of $2,500 covering his claim for personal injuries, loss of wages, maintenance and cure. The settlement was attended by a local constable who had threatened libellant with arrest for failure to pay a grocery bill of $113 which had been placed in the constable's hands for collection, and which was paid out of the proceeds of the settlement. The jury verdict set aside the release under appropriate instructions from the court.

■ Undeniably releases executed by seamen are subject to careful scrutiny. The transaction bears a close analogy to dealings between fiduciaries and beneficiaries, with the burden upon the fiduciary to affirmatively show that no advantage has been taken, and the burden is particularly heavy where there is inadequacy of consideration. Garrett v. Moore-McCormack, supra.

■ The instant proceeding is a far cry from that as presented in German v. Carnegie-Illinois Steel Corporation. When the $3,500 offer of settlement was initially made to libellant on or about August 15, 1957, he refused the same and proceeded to communicate with his proctor of record in this proceeding. Three days later, the company gave libellant sufficient cash to purchase a ticket to Alexandria, Egypt, which cash was used

1. This Court takes cognizance of the fact that proctors in admiralty universally accept employment in personal injury cases involving foreign seamen on a contingent basis of 40% of the recovery, and not infrequently the percentage is one-half.

by libellant for the payment of maintenance and other purposes. It is apparent, however, that libellant had no intention of returning to Egypt at any time, as he suggests that no job was available in that country and he would "die with hun*gry*". As evidence of this fact, libellant admitted that he signed on the Liberian steamship Madison Bell on October 15, 1957, at Mobile, Alabama, as second engineer at wages of 100 pounds per month; he having left Rotterdam on his new employer's vessel immediately following the consummation of the $3,500 settlement. Furthermore, the settlement of September 23, 1957, was at libellant's insistence, he having voluntarily visited the respondents' agent. who paid the claim.

Manifestly, it cannot be said that this seaman was "overreached". A review of the discussion and authorities cited in Norris, The Law of Seamen, Vol. 1, Ch. XXIV, pp. 532–555, indicates that this release carries with it all of the essential characteristics which tend to sustain its validity. At no time is it contended that respondents minimized libellant's claim, or otherwise misrepresented the facts or his chances of recovery. There may have been "double dealing" behind the back of proctors in whose hands the claim had been placed, but to this extent libellant was as much, if not more, to blame than respondents, for it was the libellant who reopened the matter a day or two prior to September 23, 1957, after having rejected the offer made to him approximately one month earlier.

The executed release does not purport to settle any claim for wages. It is restricted to the "loss, damage, expense or personal injury" arising out of the accident of April 5, 1957. This may include wages or sick benefits accruing subsequent to April 5, 1957, unless British law provides to the contrary, but the release is not susceptible of interpretation as a complete release for all wages, overtime, etc., which are so complex by reason of the many agreements between the parties. Libellant's insistence upon his rights to his wage claim, and his correspondence with Hadjilas, pointedly suggest that we are here dealing with an intelligent man who well understood the full purport of the release signed on September 23, 1957.

■ The evidence does not support any claim for unpaid maintenance and, while a further operation on the hand appears to be in order, the settlement forecloses any obligation on respondents' part to pay for same. Nor is there any valid claim for failure to treat. These causes of action, together with the cause of action for damages, will be dismissed upon payment of the sum of $1,750 to the libellant for the use and benefit of his proctors in discharge of the statutory lien for services rendered. In light of all the attendant circumstances a fee in this amount is deemed to be reasonable, proper and adequate.

The third cause of action is a claim for damages flowing from the withholding of libellant's gear, effects, etc. Conceding that certain articles were not returned for some months following the accident, the claim for damages is frivolous.

■■ The matter of wages and possible penalties will be reserved for further consideration following a proper summarization by proctors. It is not incumbent upon the Court to examine a multitude of wage accounts and other exhibits (some of which are in a foreign language or illegible) to ascertain whether the wages have been fully paid. It is sufficient to state that the Greek Collective Agreement has no application to a seaman employed on a British flag vessel, unless the laws of Great Britain provide for same. Proctors will endeavor to agree upon the basic facts relating to the claim for wages and penalties, bearing in mind that the British law is controlling other than as to any failure to abide by the statutes of the United States, and thereafter present the data to the Court. for appropriate action.